UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BLAIR SWILER,

    Plaintiff,

v.                                        Case No.:  2:24-cv-661-SPC-KCD

RSJ VENTURES, LLC,

    Defendant.
_____/

## **OPINION AND ORDER**

Before the Court are Plaintiff Blair Swiler's Renewed Application for Entry of Temporary Restraining Order and Preliminary Injunction (Doc. 37), Defendant RSJ Ventures, LLC's Opposition (Doc. 50), Plaintiff's Reply (Doc. 54), and Defendant's Sur-Reply (Doc. 57). For the below reasons, the Court denies the motion.[1]

This case is about beef jerky packaging. Plaintiff is a chef who was working on a beef jerky recipe when he met Dennis Riedel. The two began to sell Plaintiff's beef jerky products and formed RSJ in 2009. Plaintiff created the "Chef's Cut" line of jerky products. "Chef" referred to Plaintiff. Plaintiff claims that he allowed RSJ to use his name and reputation to promote the

---

[1] The Court has already denied Plaintiff's request for a temporary restraining order. (*See* Doc. 39). So this Order considers only the request for a preliminary injunction.

products so long as he had control over the quality of the products and an ownership interest. He worked with RSJ as both a co-founder and an employee. This was a success, leading to millions of dollars in revenue.

In 2018, Plaintiff was terminated as an employee. RSJ, including the Chef's Cut brand, was sold two years later. After the sale, Plaintiff no longer had an ownership interest in the company and was forced out, having no say over the quality of the products. Yet RSJ continued to use Plaintiff's name to promote the Chef's Cut products. Specifically, RSJ began using Plaintiff's signature on its packaging.

In April 2022, Plaintiff sent a cease-and-desist letter to RSJ. But RSJ did not stop using his signature on their packaging. Over two years later, in July 2024, Plaintiff sued. Plaintiff alleges violations of the Lanham Act, 15 U.S.C. § 1125 *et seq*; Florida's prohibition on unauthorized publications of names or likeness, Florida Statute § 540.08; and the Florida Deceptive and Unfair Trade Practices Act, Florida Statute §§501.201 *et seq*. (Doc. 1).

Plaintiff also requests a preliminary injunction "requiring Defendant to immediately cease use of Plaintiff's name, signature and likeness," "cease the advertising, promotion, marketing, or sale of any Chef's Cut products bearing Plaintiff's name, signature, or likeness," and "cease the production, manufacturing, packaging, or distribution" of any such products. (Doc. 37 at 22). In opposition, Defendant argues, among other things, that Plaintiff seeks

an impermissible mandatory injunction and cannot demonstrate irreparable injury (largely because of the delay in seeking this relief). (Doc. 50). On February 19, 2025, the Court held an evidentiary hearing on the request for preliminary injunction. (Doc. 56). The parties have since replied and sur-replied. (Docs. 54, 57).

A preliminary injunction is an "extraordinary and drastic remedy." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1249 (11th Cir. 2016). To obtain a preliminary injunction, Plaintiff must show "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). The moving party must establish all four elements, and "if any element is not proven, there is no need to address the others." *Sofarelli v. Pinellas Cnty.*, 931 F.2d 718, 724 (11th Cir. 1991).

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held[.]" *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025) (citation omitted). Plaintiff's request strays from this purpose. Defendant has been using Plaintiff's signature on their packaging for years. At the hearing, Defendant's CEO testified that they have voluntarily stopped purchasing packaging with his name and likeness

(and began doing so before Plaintiff filed suit). (Doc. 56 at 54–58). So the only products in the marketplace with Plaintiff's signature are the residual products now out of Defendant's control. (*Id.*). Plaintiff does not request that the Court preserve this arrangement; rather, he asks the Court to step in and effectively order a product recall. So what he seeks is a mandatory or affirmative injunction. *See, e.g.*, *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("Thus, the recall order at issue did not operate simply to preserve the status quo, or to restrain [the defendant] from further acts of possible infringement, because it involved products no longer within [the defendant's] possession" it "was something more than a prohibitory preliminary injunction."). This sort of request carries a "heightened burden of demonstrating entitlement to preliminary injunctive relief" that is met only in "rare circumstances in which the facts and law are clearly in favor of the moving party." *Haddad v. Arnold*, 784 F. Supp. 2d 1284, 1295–96 (M.D. Fla. 2010) (citations omitted). Plaintiff never acknowledges that the relief he seeks is mandatory or affirmative, rather than prohibitory. For this reason alone, he has not met his burden, and the Court must deny his motion.

Plaintiff's motion also fails for another reason—he has not shown imminent irreparable injury. "A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

In plain English—irreparable injury is essential. Indeed, "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176. The irreparable injury also must be "imminent." *Wreal,* 840 F.3d at 1248. So "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* For this reason, courts routinely refuse to grant preliminary injunctions when faced with unexplained delays of only a few months. *See Wicked Grips LLC v. Badaan*, No. 8:21-CV-2131-KKM-SPF, 2021 WL 4710488, at *5 (M.D. Fla. Oct. 8, 2021).

Plaintiff claims that because he has shown a substantial likelihood of consumer confusion, he enjoys a rebuttable presumption of irreparable harm. (Doc. 54 at 2). Even assuming he's made the requisite showing and such a presumption exists, the Court finds it rebutted by Plaintiff's unexplained delay in seeking preliminary injunctive relief. Plaintiff testified that he first took issue with Defendant using his signature on packaging in March 2020, when he saw mock packaging at a trade show. (Doc. 56 at 37). But he did not send a cease-and-desist letter until two years later, on April 6, 2022. (*Id*. at 31–32). Defendant responded two months later by rejecting the letter as meritless. (Doc. 26-6). Yet Plaintiff waited two years before he sued in July 2024. (Doc. 1).

Plaintiff's post-suit actions also demonstrate a lack of urgency. After filing his complaint, he waited two months before first moving for injunctive relief. (Doc. 16). The Court twice denied his request without prejudice. (Docs. 17, 28). He then let another two months elapse before renewing his motion. (*See* Docs. 30, 37). Finally, he moved jointly with Defendant for a 30-day extension of time to respond to his motion and to continue the evidentiary hearing. (Doc. 41).

The Court held the evidentiary hearing on this matter nearly five years after Plaintiff first objected to the use of his signature. The Court opened the hearing by asking Plaintiff to address this delay. (Doc. 56 at 4) The Court specifically pointed to the cease and desist letter of April 2022 and the delay in anything else happening for years after that. Plaintiff offered almost no explanation for why he waited two years before sending the cease-and-desist letter and then waited another two years to sue. He simply remarked that it "took [him] a while" to find an attorney. (*Id*. at 33). Despite this inadequate showing, the Court gave him yet another opportunity to file a reply brief. The Court expressly directed him to address the delay issue. (*Id*. at 89) ("That is a concern of the Court. And I … started today's hearing indicating that. So to the extent that there's anything that you can present to the Court on the timing issue in the context of irreparable harm, that would be helpful."). Rather than ease the Court's concerns, Plaintiff replies that he is entitled to a presumption

of irreparable harm and recounts the post-suit timeline. (Doc. 54 at 2–6). He ignores the four years of delay surrounding his cease-and-desist letter. (*Id.*).

Plaintiff's unreasonable delay undermines any claimed imminent irreparable injury. He sat on his hands for two years before sending a cease-and-desist letter and then waited another two years before filing this lawsuit. And even after suing, he let months elapse before filing and renewing his preliminary injunction motion. *See Anago Franchising, Inc. v. CHMI, Inc.*, No. 09-60713-CIV-ALTONAG, 2009 WL 5176548, at *13 (S.D. Fla. Dec. 21, 2009) (finding a post-suit delay of two months before filing a preliminary-injunction motion along with a two months' delay in renewing the motion "combined . . . indicate the absence of actual and imminent harm"). Both periods are relevant to the Court's imminent irreparable injury analysis. *See Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *5 (S.D. Fla. Oct. 31, 2017) ("(1) a plaintiff cannot delay in filing a complaint after discovering a potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed."). But Plaintiff fails to justify both periods of delay.

Nor does he offer any caselaw granting a preliminary injunction when faced with such a lengthy delay. Defendant, on the other hand, offers a litany of opinions denying preliminary injunctions when faced with delays of only a few months. (Doc. 50 at 19). So even if a presumption of irreparable harm

applies here, the presumption is easily rebutted. *See Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n, Inc.*, No. 22-14257, 2023 WL 3704912, at *3 n.2 (11th Cir. May 30, 2023) ("[E]ven assuming the University would have been entitled to a presumption of irreparable harm . . . [s]uch a presumption is rebuttable, and the University's delay necessarily undermined a finding of irreparable harm.") (cleaned up); *Wicked Grips*, 2021 WL 4710488, at *4–5 ("[E]ven if this Court applied a presumption of irreparable harm for copyright infringement," that presumption would be rebutted by an "unexplained 18-month delay" after the plaintiff's "initial cease-and-desist letter").

Plaintiff has not met his burden to show why the extraordinary and drastic remedy of a mandatory preliminary injunction is warranted here. Nor has he shown imminent irreparable injury. For these reasons, the Court denies his request for a preliminary injunction.

Accordingly, it is now **ORDERED:**

Plaintiff's Renewed Application for Entry of Temporary Restraining Order and Preliminary Injunction (Doc. 37) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 25, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record